3-0-9-0-4-3-1 Township of Jubilee, Napoli, D'Angelo Fortes v. State of Illinois Appellant Paul Burks Thank you. My name is Paul Burks. I'm an Assistant Attorney General and I represent the State of Illinois. This is a quiet title action brought by the Township of Jubilee against the State of Illinois claiming ownership of a parcel of land. Now the State Sovereign Immunity Act states that the state shall not be made a defendant or a party in any court. Generally, that prevents anybody from naming the State of Illinois as a party defendant in a circuit court action. And that's generally the first step in any sovereign immunity analysis is to really just look at the caption. Have they named the state? And if so, under the plain language of the Act and under Smith v. Jones, which is an Illinois Supreme Court case, the case is barred by sovereign immunity. Generally, in some sense, that's really a pleading standard more than a substantive rule of law because there is an ability to get around that step one of the Sovereign Immunity Act, step one of the sovereign immunity analysis by naming an individual rather than the state. And then what courts have done is they've said, well, just because you've named an individual doesn't mean you're not suing the state. And what we'll look at is we'll look at the issues raised in the relief sought. So even if this case were to get over that initial hump, which it can't because it's named the State of Illinois, and get over the Smith v. Jones sort of black letter rule of law, we would be looking at the issues raised in the relief sought to see if sovereign immunity applied. And again, the Illinois Supreme Court has said in another quiet title action called Sasse v. Kramer that that issue, a quiet title seeking ownership of a property of land against the state, is the type of action that involves the property of the state and must be brought in the Court of Claims Act. So we see under the governing legal standard, even if an individual were sued in the caption and we kind of move through the pleading standard, we would see that the binding law is that this type of an action is the type of action that goes into the Court of Claims. Now, the type of action that doesn't go to the Court of Claims are actions that are against an individual, a head of a department that names an individual and alleges unconstitutional conduct by that individual. That's the officer sued exception. It was an exception to sovereign immunity dating back hundreds of years and it still exists as an exception to sovereign immunity. In order to fall within that exception, you have to name an individual and you have to allege unconstitutional conduct. So plaintiff has relied in his brief on a number of cases where a suit was allowed to go forward in the circuit court that incidentally involved the land of the state. For example, a second district case called Flick v. Kramer. And those cases were against individuals and they did allege unconstitutional takings. So they fell within that exception to sovereign immunity. This case doesn't fall, it doesn't name an individual, it doesn't allege unconstitutional conduct. It alleges quiet title and we have Saski Kramer that says when that's the relief you seek, when that's the claim that you make, that's the claim that involves the property of the state and should be brought in the court of claims. It makes some argument that you need a written, or the township rather, makes the argument that you have to have a written document deed or something like that to fall under that umbrella. They do argue that only claims against the state where the state has written deed are barred by sovereign immunity. So, for example, if the township were claiming adverse possession against our written conveys, they would say, well, that one goes in the court of claims. But if the state has equitable ownership, then according to their theory, then the case can go forward in the circuit court. But our position is that that theory, that exception really doesn't make sense. It doesn't make sense under the language of the Immunity Act, which says the state shall not be made a defendant or party in any court. And that doesn't really allow for this kind of very nuanced approach to what their evidentiary showing is to determine whether they'll be made a defendant or party in any court. So you really can't get to that exception from the language, and you can't get there from the legal standard that's been applied when plaintiffs have named an individual rather than the state. The legal standard, which is what are the issues raised and what is the relief sought? And that legal standard would never turn on what type of evidence has the state presented. Have they presented a written document, or have they presented the testimony of individuals, or have they argued for an equitable exception? So if you were to apply either the language of the Immunity Act or the legal standard, you couldn't get to that theory, to that approach to sovereign immunity. Ms. Brooks, can you waive sovereign immunity? I can't. Only the legislature can. Only the legislature is permitted to waive sovereign immunity. They have to do it through clear statutory language. So in this case, there really wasn't any way. Even if this were, sovereign immunity were the type of defense that any party for their conduct in a court could waive, which it is a little different because it requires a statutory exception. Even if it were, I don't see anything that the Attorney General did in defending this case that would raise waiver in any normal circumstances. So your counterclaim does not waive in any way? I mean, you made yourself a plaintiff with the counterclaim. That is correct. We made ourselves a plaintiff with the counterclaim, but only after we moved to dismiss their complaint on grounds of sovereign immunity. We said, we're in the wrong court. You have no jurisdiction. Dismiss their complaint, and the circuit court disagreed. And the case proceeded, and we had to file an answer. Now, at that point, we are subject to the jurisdiction of the court because that's what the court has held. And we litigated the case as if we were subject to the jurisdiction of the court. But I think that the critical moment in the case comes, did we raise the jurisdictional defense when we could have raised it? Now, having lost that, there's no real reason why we should have to litigate with one hand tied behind our back, but why we can't raise meritorious counterclaims once we've been subjected to the circuit court's jurisdiction, erroneously in our view. So I wouldn't think the counterclaim waives our sovereign immunity. There was a case of Nickerson, I believe, in which the state sued somebody in the circuit court, which the state is free to do. And they raised a counterclaim. They raised several counterclaims. And the Illinois Supreme Court said, well, all your tort counterclaims, those have to go to the court of claims. You can't bring those, even in this action, when the state has sued you. Your counterclaim that goes to the ownership of the property, which is sort of a defensive counterclaim, it's kind of an affirmative defense raised as a counterclaim, that by adjudicating the state's claim, they would necessarily adjudicate your claim, will allow that as an exception to sovereign immunity, allow you to bring that in the circuit court. That's the case they cited in their brief. That's the case they rely on. I think that's very distinguishable in terms of the procedural posture. What's the case that you rely on that says that if you file a counterclaim, you haven't somehow subjected yourself to the jurisdiction of the circuit court? You know, I don't have a case that's directly on point in which the state's motion to dismiss for lack of jurisdiction was denied, and then the state was forced to litigate in the circuit court and file a counterclaim, and then that case was then reversed on appeal, which is the situation we have here. And so I would have to rely on kind of the principle, which is that to not allow us to do so is really essentially to force us to litigate a case with one hand tied behind our back. Doesn't the Pullman case do exactly that, say exactly what you're saying? Or are you familiar with it? I'm familiar with the Pullman case, but I don't recall that aspect of the case. I apologize, Your Honor. If I could have permission to, after argument, review that case and submit a response, I would appreciate that. Sure. Thank you. And then we'll give your colleague seven days. Absolutely. Absolutely. Thank you, Your Honor. Would you have defended against the lawsuit without filing a counterclaim? We could have defended against the lawsuit in the sense that we could have claimed that they don't have the right to ownership of the property, but it wouldn't have settled who does have the right to ownership of the property. So once the case was being litigated in that jurisdiction, much like Nickerson, the case I said before, it sort of made sense to fully and finally determine the merits. But that doesn't – I mean, because we raised our jurisdictional defense when we had the opportunity to do so, I don't think that that should impact our ability to seek a reversal based on the jurisdictional defense, which was preserved. And had there been no jurisdiction, there would have been no counterclaim and no motions for summary judgment, obviously. I mean, the theory is there's no jurisdiction. There's no jurisdiction ever. There's no jurisdiction ever. Yes, Your Honor. There's no jurisdiction over our counterclaim. There's no jurisdiction over the motions for summary judgment. Yes. It's all a nullity because the court had no power to adjudicate it. Turning to the substantive basis for the summary judgment motion, the court found there was a statutory dedication and its opposition on appeal that there really wasn't an acceptance of that statutory dedication. They concede, they acknowledge there's no express acceptance. They don't have a document from the township supervisors that says we accept this dedication. So what we're really talking about is was there an implied acceptance of that dedication. The only thing that they pointed to in their briefing is an 1860 township minutes where they discussed the paving of a road. And if you look at where the road goes, you can see it goes along the edge and around the town square. And we would say that since a statutory dedication has to be precise, it has to be clear, that the township sort of acquiescence or agreement to build that road would not constitute an acceptance because it's ambiguous as to whether or not that road was going through or on the town square at all. It appears to, if you look at it, it says from the southwest directly north to the corner and then directly across and then up. So it would appear to go around. And there's no other evidence in the record of any acceptance of that dedication. The other tidbits that they rely on all occurred over 100 years later. And I did cite case law in my reply brief that, you know, it has to be contemporaneous. You can't sit on your rights for decades and then come back later and say, no, we've accepted it now 100 years later. So our position is that there was really no acceptance of that dedication and so therefore no right to title in the township. And then finally, we would rely on the doctrine of adverse possession. There are four affidavits uncontradicted in the record of people in the vicinity of the property who all testify that it was the state that exclusively cared for that land over a period basically dating back to the early 1980s through the present day. And that caring for that land took the form of mowing the lawn, allowing people to establish a prairie ground there, establishing a sign and maintaining the sign. And there is no counter evidence. There's no contrary affidavits in the record. So it is undisputed that it was the state who has been maintaining that land over this, exclusively maintaining that land over this period of time. And the standard that's generally been used for adverse possession is did you exercise public acts that an owner would exercise sufficient to indicate to persons in the immediate neighborhood that it had exclusive control. And since we have the affidavits from the people in the neighborhood and they say it was the state, then we've satisfied that standard. Did you seek permission of the township to put up the sign? There was a request prior to erecting the sign from the state to the township for their acquiescence to erecting the sign. Is that an acknowledgment that the township owned it? I don't think it's an acknowledgment that the township owned it. It could have been a gesture of goodwill. But at the same time, the permission to erect the sign was limited. It was sort of a limited request. And you can see over 20 years, that was in 1978. And our affidavits say from 1983 on, people were asking the state, can we develop a prairie land here? Can we plant here? And it was a state moment. So I would say that our ownership far exceeded the grant of permission, if it were characterized as permission. And that our ownership was open and notorious and in excess of simply putting up the sign. And so, therefore, exceeded any grant of permission and was still subject to adverse possession. Those would be our three principal arguments on appeal. And I will reserve the rest of my time for rebuttal if I may. Thank you. And Mr. Cordes? Good morning, Justices. Dan Cordes on behalf of the Township of Jubilee. I guess getting right to the threshold issue, and that is the jurisdiction of the trial courts. I guess I have at least four points that I would make in connection with that. And first of all, we should start with the case law. And I think that if the court goes through the Flick v. Kramer case, the Hergett National case, and those are the two cases that I've cited principally in support of our argument. But even if you look at the Village of Riverwoods case and the Evans v. Brown case that the state has cited in support of their argument, there is discussion in every single one of those cases about a difference between the state presenting record evidence of their possession of property, a deed, an easement, a court order entered in connection with condemnation proceedings. In all those cases where the court said, no, this doesn't belong in the circuit courts, it belongs in the court of claims. All those cases discussed the state presenting credible evidence of written title. And that does make sense. And it makes sense because the state... Did any of those cases rely on that issue for its decision? I mean, it's true that they all contain that kind of document, but... Well, I think the difference... I did not understand that those cases relied on it for the jurisdictional decision. Well, I think Justice said that's a fair point as to the Hergett National case where, you know, there is an officer being sued and there may be mandamus proceedings trying to get eminent domain action going. And those cases are different, but, you know, it is, I think, noteworthy that they all mention the written deed or some form of public record that the state can produce. And so I do think that those cases mention that. I think it's a very important part of those opinions. And, you know, if you take the state's theory to its illogical conclusion, you know, the state really has, at some point down the road, some interest in every piece of property in the state of Illinois. So are we going to have every time someone goes into circuit court to acquire a title and they name their people, their defendants, and then they throw in unknown record owners and claimants? Well, at some level, I mean, theoretically, that's the state. And so the state could just come in and bounce everybody to the court of claims. I know that they're not going to maybe do that as a practical matter. But, you know, I think that that's the conclusion that the state could reach based on that theory. The other thing is, Your Honor, doing this practically, this case is going to end up in the circuit court anyway because first of all, as Justice McDade pointed out, the state filed a counterclaim. So under the Nickerson case, Manning v. Nickerson, the state's property rights have to be interpreted and construed by the trial court so the defensive claims, the property rights of the private party or the township of Jubilee have to be. So it belongs in the trial court. So it's almost like a unity of the issue. Well, if the appellate court reverses and we get sent to the court of claims or if that's the ruling, the township of Jubilee might write a letter, you know, in a week and say, State of Illinois, time to get your sign off our property. Groundhog Society, time to get the prairie plot off this public square of ours. And the state's got to run into circuit court and seek an injunction. And we're right back to the Nickerson case because the state's not going to go into the court of claims and sue the township because my understanding is they can't. They have to go to the circuit court. So we're going to end up there anyway, I think, as a practical matter. You're not saying your client's going to do that? No, no, I was just thinking. No, no, I'm not. I was just thinking. Certainly, you know, could have happened ten years ago if there had been bad blood between the township and the state. The township should have, maybe, could have said, hey, time to get your sign off my property. And as for, you know, the, again, going back to the procedural history of the case, you know, there's this claim made that once the state lost their motion to dismiss on jurisdictional grounds that, well, they had to stay in the case and litigate for six years. Well, they could have filed an interlocutory appeal under Rule 304 and gotten their answer from the appellate court to the Supreme Court and instead they litigated for five or six years. And they lost. And so then we're back here. So I don't think that, I think that the court should take that into account for equitable purposes and estoppel purposes. A lot of money and a lot of time has been wasted in the circuit court. As for the merits of the case, I don't know if anyone's in the area. Jubilee College, in 1860, the trustees of Jubilee College set out this plaque for the town of Jubilee, marked this property, two and a half acres, as the public square. Four months later, local township residents petitioned the township to reroute a public road around the square, obviously acknowledging that the township owned and had accepted the public dedication of that property. And then you don't hear a word for 40, 50, 60 years. And, you know, there's claims made that, well, the township didn't take action to, you know, overtly accept this dedication. Well, it's a public square. It's open property. It's just to be maintained. It's not like buildings were to be erected on it. It's a public square. And then the state didn't mention in their argument, they mentioned it in their brief, but in 1936, when there was a the trustees of Jubilee College were dissolved and the property changed hands and ultimately got to the state, well, all the property that Jubilee College sat on went to the state except the public square. In the 1980s, Jubilee College was, the grounds were designated as a state park except the public square. In 1978, the state wants to build a sign. It's not a friendly, neighborly gesture. They needed permission from the township. They needed permission from the township to put a state park sign on the township's property. In the late 1990s, 96 or 97, Peoria County needs to do some road work around the public square. They ask the township for a quick claim deeds. They don't ask the state. And why would that be? Of course, because the township owns it and everybody knows it. Now, as for adverse possession, the state mentioned in its brief, I don't know off the top of my head if it was a reply brief or their opening brief, that they'd had adverse possession from 1988 to 2008. Well, that one's easily handled because you would certainly think that the client title action followed by the township in 2003 would break that string of allegedly adversely possessing the property. So, I don't for that reason and others, I don't think that the state's adverse possession claim holds water. And that's kind of a summary, I realize, of what our brief has said, but I do think that those are the salient points. And, you know, I think that the jurisdictional hurdle is an issue that the court has to grapple with. And in summary, I do think that the procedural history of this case shows that the state filed a counterclaim, they litigated, and they lost. And there were other ways to deal with the jurisdictional as opposed to litigating for five or six years in the trial court. I think the case law relies expressly on the state presenting some tangible, some real form or evidence that they own record title to property before the case can be forced into the court of claims. And actually, the Village of Riverwoods case, which the state cites in their brief, and I really didn't cite it for support in mine, if you look at that Village of Riverwoods case, it has a nice framework for dealing with this jurisdictional issue because state files a motion to dismiss or, you know, Village of Riverwoods files its complaint, state says we belong in the court of claims, and they file their 2-619 motion to dismiss. And the court says, well, the state has to meet its initial threshold burden to meet its motion to dismiss. And what is that initial threshold burden? That is some evidence of record title. And I think in the Village of Riverwoods case, they presented a 1929 deed for evidence of an easement. So the state prevailed on its motion to dismiss. It presented that record evidence. And I do think that that makes sense. I do think that that distinction makes sense under the law. Otherwise, you know, there would be a lot more cases in the court of claims because the state really has an interest in every piece of property in the state of Illinois. They're a non-record owner and claimant. Every piece of property in the state of Illinois, by my view. I don't know if we're... I'm not sure that this was in the record or not, but what is the...who is the township selling this to? They're not selling it, Your Honor. And if it's not in the record, it's all right? No, it's definitely mentioned in the briefs. The state has said, oh, well, the township is going to sell off this piece of property and make money from it and it should be held for public purposes. Actually, my...I think the answer to that is the state's not doing anything with it. But if they did, well, that's the township citizen's business. That's not the state's business. I mean, if Peoria County wants to do some road grading work, the state of Illinois can't come in and say, well, we don't like the way you're grading that road or something. I mean, it's a local matter. So, you know, the answer is...that's a long-winded answer to a...I don't... to this piece of property. It's a very small plot of land at the entrance of Jubilee College State Park. There's a subdivision off to one side of it, but I'm not aware of any plans. Thank you. Thank you. Dan said... ...